

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:RB
F. #2022V03828

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 13, 2023

<u>By ECF</u>

The Honorable Raymond J. Dearie
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. John Pappa</u>
     <u>Criminal Docket No. 97-CR-1005(S-1)-01 (RJD)</u>

Dear Judge Dearie:

  The government respectfully submits this letter in opposition to defendant John Pappa's motion for a sentence reduction under Title 18, United States Code, Section 3582(c)(1)(A). For the reasons stated below, this Court should deny the motion.

I. <u>Background</u>

  A. <u>Offense Conduct</u>

  On May 14, 1999, the defendant was convicted after trial of 10 felonies, including two counts of murder in aid of racketeering and two counts of conspiracy to commit murder in aid of racketeering, related to his role in the Colombo Organized Crime Family. <u>See</u> Presentence Investigation Report ("PSR") ¶¶ 1-8 (Aug. 5, 1999). As proven at trial, the defendant and other gang members engaged in racketeering activities, predominantly involving murder, and drug distribution from June 1992 to December 1997. <u>Id.</u> The defendant was personally responsible for three of the four murders, and ordered and assisted in the murder and disposal of the body in the fourth murder. <u>Id.</u> ¶¶ 20-21, 31, 34-36, 40.

1.   The Murder of Joseph Scopo

In October of 1993, the defendant, then 19 years old, was a part of a three-man "hit-team" assembled and ordered to carry out the murder of Joseph Scopo (hereinafter "Scopo"). Id. ¶¶ 17-18; see id. Scopo was a high-ranking member of the Colombo Family, which was having an internal war. Id. Scopo was aligned with one faction, the Orena faction, whereas the defendant and the "hit-team" were aligned with the opposing faction, the Persico faction. Id. The other members of the "hit-team" were Eric Curcio (hereinafter "Curcio"), the leader and organizer of the "hit-team", and a higher-ranking member than the defendant in the Persico faction, and John Sparacino (hereinafter "Sparacino"). Id. On October 20, 1993, the crew consisting of Curcio, Sparacino and the defendant ambushed Scopo as he returned to his residence in Queens. Id. ¶ 20. Apparently, though Sparacino sprayed the automobile with gunfire, Scopo was nonetheless able to exit the vehicle unharmed, and it was the defendant who immediately pursued Scopo, striking him three times with gunfire, once fatally. Id.

2.   The Murder of Rolando Rivera

After the murder of Scopo, Sparacino took credit for killing Scopo which outraged Curcio and the defendant. Id. ¶ 22. Curcio and the defendant agreed that Sparacino must be murdered; both Curcio and the defendant were determined to take credit for the murder. Id.

Rolando Rivera (hereinafter "Rivera") and Sparacino were close friends. Id. ¶ 25. In April of 1994, upon return from a trip to Florida with Curcio and the defendant, Rivera reported to his girlfriend, Michelle Gedz (hereinafter "Gedz"), that Curcio had advised Rivera that Sparacino had been speaking badly about Rivera, and Curcio further warned Rivera to stay away from Sparacino, insinuating that Sparacino would soon be murdered. Id. ¶ 26. About a week later Sparacino, called to speak to Rivera but Gedz answered the phone and revealed what Rivera had been told by Curcio. Id. ¶ 27. Subsequently, Sparacino confronted Curcio over the telephone, and Curcio then advised the defendant of Rivera's indiscretion and the two agreed that Rivera must be murdered. Id. ¶ 28. Curcio and the defendant, having repeatedly contacted Gedz to locate Rivera, eventually connected with Rivera who agreed to meet with Curcio and the defendant on June 8, 1994. Id. ¶ 29. On June 8, 1994, having acquired a .38 caliber revolver and a stolen van to carry out the murder, the defendant, Curcio and Rivera drove over the Verrazano Narrows bridge to Staten Island and just after crossing the bridge, Rivera was shot four times. Id. ¶¶ 29, 31. After shooting him, the defendant and Curcio pushed Rivera, who was still alive, out of the moving van. Id. ¶ 31. That same night, an off-duty police officer discovered Rivera, who was still breathing, on the shoulder of the Staten Island Expressway; a short while later, Rivera died. Id. ¶ 31.

### 3. The Murder of John Sparacino

In July of 1994, Sparacino, still upset that the defendant and Curcio were not giving him credit for the murder of Scopo, was at a club openly making disparaging comments about the two. Id. ¶ 32. The motivation to kill Sparacino was renewed though it was not until August of 1994, that the defendant, solicited the help of his co-defendant, Calvin Hennigar ("Hennigar"). Id. ¶¶ 33-34. On August 13, 1994, Sparacino went to Hannigar's home on Staten Island where Hennigar shot Sparacino in the back of the head, killing him. Id. ¶ 35. During the early hours of August 15, 1994, the defendant and Hennigar transported Sparacino's corpse in a stolen automobile to 830 Howard Avenue on Staten Island. Prior to abandoning it, the defendants set the vehicle on fire. An autopsy revealed that Sparacino's body had been hog-tied and mutilated; a flap of skin had been cut off of Sparacino's face and his penis had been severed and placed in his mouth. Id. ¶ 36.

### 4. The Murder of Eric Curcio

Curcio, like Sparacino, claimed responsibility for the murder of Scopo, and though initially the defendant did not openly object to this, he later became distrustful of Curcio. Id. ¶¶ 37-38. In March of 1994, despite going on to commit two other murders with the assistance and support of Curcio (the murders of Rivera and Sparacino), the defendant started to become suspicious that Curcio was responsible for the murder of a friend of the defendant. Id. ¶¶ 22, 31, 39. After the murder of Sparacino, the defendant attempted to recruit help to murder Crucio without success, leaving him to murder Curcio alone. Id. ¶¶ 39-40. On October 4, 1994, the defendant ambushed Curcio at Curcio's place of business, shooting him more than 10 times in the face, chest, and hand. Id. ¶ 40.

### 5. The Narcotics Conspiracy

From around June of 1992 until December of 1997, the defendant and Hennigar operated a retail drug business together, distributing significant amounts of marihuana, cocaine and ecstasy, and specifically on at least three occasions, possessed with intent to distribute one kilogram of cocaine, five pounds of marihuana. Id. ¶ 2, 41, 43.

## B. Conviction and Sentencing

The defendant and co-defendants were tried on 10-counts of the indictment and defendant was convicted by a jury on May 14, 1999.[1] Id. ¶ 1. The defendant was convicted of: racketeering, in violation of 18 U.S.C. § 1962(c) & (d), (Counts One and Two); conspiracy to murder, in violation of 18 U.S.C. § 1959(a)(5), (Counts Three and Six); murder, in violation of 18 U.S.C. § 1959(a)(1), (Counts Four and Seven); possession and use

---

[1] The indictment had been superseded and contained 11 counts but Count 11 was severed prior to the commencement of trial. Id. ¶ 1.

of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1), (Counts Five and Eight); conspiracy to distribute and possess with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), (Count Nine); and distribution and possession with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count Ten). Id. ¶¶ 1-5.

The defendant was sentenced to a term of life imprisonment on multiple counts. See Judgment, ECF No. 188 (Nov. 29, 1999). Principally, the defendant received one life sentence with five years of post-release supervision on Counts One, Two, Four, Seven, Nine, and Ten, to run concurrently; a term of 10 years' imprisonment on Counts Three and Six to run concurrently with three years of post-release supervision; a term of five years' imprisonment Count Five to run concurrently to all of the terms imposed with three years of post-release supervision; and a term of twenty years' imprisonment on Count Eight with all terms of imprisonment to run concurrently and with three years of post-release supervision. Id.

### C. Post-Conviction Litigation

The defendant challenged his conviction on direct appeal. On March 14, 2002, the Court of Appeals for the Second Circuit denied the defendant's direct appeal and affirmed his conviction and sentence. United States v. John Pappa, 37 F. App'x. 551 (2d Cir. 2002).

## II. Defendant's Current Status and Request for Relief

The defendant has been in federal custody for more than 25 years, ever since his arrest on September 27, 1997. He is currently serving his sentence at the Federal Correctional Institution in Edgefield, South Carolina ("F.C.I. Edgefield").

In his motion dated December 19, 2022 (ECF No. 238) ("Def. Mot."), the defendant asks the Court to reduce his sentence pursuant to the First Step Act's compassionate release provision, 18 U.S.C. § 3582(c)(1)(A)(i). Def. Mot. 1. He claims a reduction is appropriate for the following reasons: (i) his upbringing and youth at the time he committed his offenses; (ii) his sentence will amount to an unusually long sentence resulting in a sentencing disparity when compared against other sentences for murder; (iii) the U.S. Sentencing Guidelines were mandatory at the time of his sentencing and the Court was unable to consider his youth as a mitigating circumstances; and (iv) his extraordinary record of rehabilitation. Def. Mot. 10, 13, 14, 16. Defendant also cites similar reasons when discussing the 18 U.S.C. § 3553 sentencing factors.

## III. Legal Standard

A compassionate release motion is a request for a permanent reduction in a defendant's federal sentence. Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see Dillon v. United States, 560 U.S. 817, 824–25 (2010). Compassionate release is one of the few exceptions to this

4

rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1). "[T]he defendant bears the burden of demonstrating his eligibility for compassionate release." See United States v. Antney, No. 17-CR-229(CBA), 2021 WL 4502478, at *1 (E.D.N.Y. Sept. 30, 2021) (citing United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The FSA modified prior law regarding compassionate release which previously permitted only the Bureau of Prisons ("BOP") to seek a prisoner's release. United States v. Brooker, 976 F.3d 228, 233 (2d Cir. 2020). Under current law, a defendant may bring his own motion for compassionate release after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." [2] 18 U.S.C. § 3582(c)(1)(A).

Assuming the defendant has exhausted his administrative remedies, a court may modify an already-imposed sentence upon a showing of "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Guidelines ("U.S.S.G.") and BOP policy have established clear criteria to aid in a court's determination of when compassionate release is appropriate pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). See U.S.S.G. § 1B1.13. Even if the Court's discretion is not limited to considering the criteria outlined in the United States Sentencing Guidelines and BOP policy in determining when compassionate release is appropriate pursuant to § 3582(c)(1)(A)(i), these criteria are a helpful starting point in the Court's analysis. See Brooker, 976 F.3d at 234.

Additionally, a court may reduce the sentence only after considering the factors set forth in section 3553(a) to the extent that they are applicable. 18 U.S.C. § 3582(c)(1). Thus, the existence of extraordinary and compelling reasons per se does not compel compassionate release if the court determines that the Section 3553(a) factors warrant continued imprisonment. See United States v. Gotti, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020) ("[A] defendant who meets all the criteria for compassionate release consideration . . . is not thereby automatically entitled to a sentence modification. He is simply eligible for a sentence modification. The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

---

[2] Defendant filed a request for compassionate release which was received by the warden of his facility on October 11, 2021 and the Warden never responded.

5

IV.     Argument

This Court should deny defendant's motion for the following reasons: (i) the defendant fails to present extraordinary and compelling reasons for relief; and (ii) the Section 3553(a) sentencing factors do not support his release.

    A.     Defendant Fails to Present Extraordinary and Compelling Reasons for Relief

        1. The Defendant's Upbringing and Youth at the Time of His Offenses is Not an Extraordinary and Compelling Reason for Release

Although the defendant was 19 years old at the time he murdered four separate people, "he engaged in [these] murders to advance or protect his position in the Colombo family." United States v. Pappa, 37 Fed. App'x. 551, 552 (2d Cir. 2002).  In support of his assertion that his "upbringing and youth at the time of the offense makes him less culpable", the defendant cites to several cases in which compassionate release was granted based partly on the defendant's age and upbringing at the time of the crime.  Specifically, the defendant asks this Court to look to United States v. Haynes, 456 F. Supp. 3d 496, (E.D.N.Y. April 22, 2020), United States v. Chan, No. 90-CR-1019-4 (RJD), (E.D.N.Y. Apr. 27, 2021), United Stats v. Ramsay, 538 F. Supp. 3d 407, (S.D.N.Y. May 11, 2021), and United States v. Glynn, No. 06-cr-580 (JSR), (S.D.N.Y. Feb. 24, 2022).

In the cases cited, there was some combination of those defendants barely having reached the age of 18,[3] and/or having been recruited by the criminal enterprise, and/or seeking the basic needs of shelter and protection as a result of their parents' wholesale abandonment or neglect, that the Courts relied upon in weighing youth and upbringing as a compelling reason to grant some quantity of compassion.  Neither a single factor nor a combination of any of those factors is present here.

The facts and circumstances surrounding the defendant's youth and upbringing, and his commission of four homicides are wholly distinguishable from those of the defendants in the cases he cites.  Unlike each of those other defendants, Pappa had a mother and an older sister who were seemingly around and present for his formidable years and around the time that Pappa voluntarily decided to join the Colombo crime family.  His older sister became a lawyer in England, overcoming the hardship presented by their father's death and stepfather's imprisonment.

---

[3] The defendant cites to Miller v. Alabama, 567 U.S. 460 (2012), where the Supreme Court found mandatory life sentences for those under 18 to be unconstitutional.  In Chan, the defendant was 18 years old by a matter of less than 60 days, and therefore, Chan "failed to qualify…for the Miller relief" to which his co-defendants, having committed the same conduct, were entitled.

6

Most importantly, none of those defendants killed four people, particularly for their own advancement or to protect their position in the criminal enterprise. None of those defendants exacted the degradation and humiliation the defendant did in the killing of Ronaldo Rivera, specifically as mentioned above, the evidence showed that a flap of skin was cut from Rivera's face and Rivera's penis had been cut off and shoved in his mouth. The defendant contends that "Pappa was in a setting in which he was expected to obey orders, even orders to murder" but that is undermined by his killing of Eric Curcio, who was Pappa's superior, because Curcio took credit for a murder for which Pappa thought he deserved credit. Quite simply, the defendant's facts and circumstances are wholly distinguishable from the cases he uses to support his motion.

> 2. The Defendant's Claims That His Sentence Resulted in a Sentencing Disparity and That the Guidelines Were Mandatory at the Time of His Sentence Are Without Merit

The defendant argues that his continued imprisonment results in a sentencing disparity. Def. Mot. 13-14. His position is meritless. As a starting point, "applications for compassionate relief are not vehicles for collaterally attacking the merits of a defendant's sentence." United States v. Alvarez, No. 89-CR-229 (JS), 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020) (citing United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020)). Instead, such matters may be reviewed through direct appeal or a habeas petition. Id. (citing Lisi, 2020 WL 881994, at *4).

Any disparity in sentencing here is nothing more than a function of the defendant having murdered multiple people in the course of racketeering, some of whom were killed based on the defendant's selfish effort to be recognized and respected for murdering. As such, the defendant's own violent criminal history contributed to appropriate life sentence he now attacks. Indeed, this Court determined that the sentences met the sentencing objectives at the time it was issued.

> 3. The Defendant's Rehabilitation, While Impressive, is Not an Extraordinary and Compelling Reason for Release

The defendant has made good use of his incarceration with programming, mentoring, certifications, and a good reputation. Nonetheless, these efforts do not rise to extraordinary and compelling as "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021) (defendant's claim that his good disciplinary record evinced that he had been rehabilitated was neither extraordinary nor compelling); Figueroa, 2021 WL 664004, at *4; Johnson, 2021 WL 466782, at *4 n.4; Markou, 2020 WL 6945923, at *2.

Given that his other arguments, addressed above, that he believes are extraordinary and compelling (e.g., his youth and upbringing, any sentencing disparities, or infirmities) are unpersuasive, his alleged rehabilitation alone cannot be the basis for compassionate release.

      B.      <u>The Section 3553(a) Factors Weigh Against a Sentence Reduction</u>

Even if the defendant had presented extraordinary and compelling reasons justifying a sentence reduction – which he has not done – the Court must still consider the factors contained in 18 U.S.C. § 3553(a).  <u>See</u> 18 U.S.C. § 3582(c)(1)(A); <u>see also</u> <u>United States v. Jones</u>, 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary – but not sufficient – for a defendant to obtain relief under § 3582(c)(1)(A)."). The Section 3553(a) factors may serve as "an alternative and independent basis for denial of compassionate release." <u>Jones</u>, 17 F.4th at 374 (quoting <u>United States v.</u> <u>Robinson</u>, 848 Fed. Appx. 477, 478 (2d Cir. 2021) (summary order)).  These factors weigh heavily against any modification of the defendant's sentence.

In pertinent part, Section 3553(a) requires the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant…[and] the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(1), (2)(A). The Court must also consider the need to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

As described above, the defendant's conviction arises from his four murders in furtherance of his own personal gain to rise in stature in a violent criminal enterprise, and his involvement in a narcotics conspiracy.  Considering the nature of the defendant's crimes, release or a reduction in sentence is inappropriate and would not reflect the serious nature of the defendant's unusually violent conduct.  <u>See</u> <u>United States v. Snype</u>, No. 02-CR-939 (DC), 2021 WL 1178238, at *4 (S.D.N.Y. Mar. 29, 2021) (rejecting compassionate release for a defendant serving a life sentence for a violent robbery); <u>see also</u>, <u>Jackson</u>, 2021 WL 4150962, at *5 (considering the Section 3553(a) factors and denying release given the defendant's role in an intentional murder and the need for deterrence); <u>United States v. Polanco</u>, No. 07-CR-780 (FB), 2021 WL 1854739, at *1 (E.D.N.Y. May 10, 2021) (denying an application for compassionate release given the especially violent nature of the defendant's crimes); <u>United States v. Myrick</u>, No. 12-CR-385 (ARR), 2020 WL 6128943, at *4 (E.D.N.Y. Oct. 19, 2020) ("Given Myrick's prior involvement with multiple murders and violent acts, I cannot rest assured that he would not pose a danger to the community if released."); <u>United States v. Cato</u>, No. 16-CR-326 (ARR), 2020 WL 5709177, at *5 (E.D.N.Y. Sept. 24, 2020) (rejecting a request for compassionate release given the defendant's "history of crime and violence").

      C.      <u>Victim Impact</u>

The survivors of the decedents whom the Government contacted in anticipation of this response are vehemently opposed to any reduction of sentence or compassionate release.  They remain devastated by the loss of their loved ones at the hands of the defendant, and they beseech this Court not to reduce the sentence or release him. Additionally, at least one survivor is still fearful for his/her physical safety should the

defendant be released. The defendant's actions were described as "heinous", and the survivors were surprised to learn that release could even be possible.[4]

V.      Conclusion

        For the foregoing reasons, the government respectfully submits that this Court should deny the defendant's motion for a reduced sentence.

                                            Respectfully submitted,

                                            BREON PEACE
                                            United States Attorney

                                  By:   /s/Raffaela Belizaire
                                            Raffaela Belizaire
                                            Assistant U.S. Attorney
                                            (718) 254-6295

cc:     Clerk of Court (RJD) (via ECF)
        Shon Hopwood, Esq. counsel for defendant (via ECF)

---

[4] Should the Court wish to read the communications from the survivors, the Government will provide them upon request.